UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VERONICA SILVA,

                         Plaintiff,        **No. 6:14-cv-06329(MAT)**
                                                        **DECISION AND ORDER**
          -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.
_____

## I. Introduction

Represented by counsel, Veronica Silva ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed and remanded for development of the record with regard to Plaintiff's treating psychiatrist, re-application of the treating physician rule, and consideration of evidence submitted to the Appeals Council.

## II. Procedural Status

On February 28, 2011, Plaintiff protectively filed for SSI and DIB, alleging disability beginning February 5, 2011, based on attention deficit disorder ("ADD"), severe dyslexia, depression,

and possible autism (pending further testing). T.91-98, 138.[1] After this application was denied, Plaintiff requested a hearing, which was held before administrative law judge Connor J. O'Brien ("the ALJ") on May 16, 2012. Plaintiff appeared with her attorney and testified. T.479-551. On September 26, 2012, the ALJ issued a decision finding Plaintiff not disabled. T.15-28.

On administrative appeal, Plaintiff submitted records from seven sources which were accepted by the Appeals Council. See T.5 (citing Ex. 15E (high school transcript dated 1997); Ex. 16E (Plaintiff's representative's legal brief); Ex. 20F (urgent care records dated 7/25/12); Ex. 21F (therapy records from St. Joseph's Neighborhood Center from 12/02/04 through 3/24/11); Ex. 22F (lumbar spine x-ray dated 8/01/12); Ex. 23F (medical records from Dr. Ronald Guzman from 7/30/12 through 10/02/12); and Ex. 24F (thyroid ultrasound dated 10/02/12)). The Appeals Council concluded, without elaboration, that this "additional evidence does not provide a basis for changing the [ALJ]'s decision." T.7. On April 23, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. This timely action followed.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

the undisputed and comprehensive factual summaries contained in the parties' briefs. Because Plaintiff does not challenge the physical aspect of the ALJ's RFC assessment, the Court limits its recitation of the medical evidence to the opinions issued by Plaintiff's treating sources and by the consultative psychologist who examined Plaintiff at the Commissioner's request.

**III. Psychiatric and Psychological Opinion Evidence**

On December 2, 2004, Arif Mirza, M.D. and Rory Houghtalen, M.D. of St. Joseph's Neighborhood Center ("St. Joseph's") assessed Plaintiff, then aged 28, for treatment of ADD and depression. T.239-42. On examination, her speech was repressed and childlike; she had poor eye contact, an inappropriate affect, no delusions or paranoia, and no thoughts of hurting herself or others. T.240. Dr. Houghtalen noted Plaintiff's "odd features, dysconjugate gaze, odd affect," "social anxiety, [and] ritualistic behavior[,]" T.242, such as walking in circles when anxious, T.241. He opined that Plaintiff's social isolation and inappropriate affect "point to autism spectrum [disorder]." T.241. See also T.242 (Dr. Houghtalen noted this was a "complex case that may represent an autistic spectrum disorder [with] prominent attention deficit" and that her "depressive [symptoms] appear reactive [at] this point."). Strattera was prescribed for her ADD, Prozac was continued for her depression, and new psychological testing was recommended. T.241. Dr. Mirza wrote a letter stating that based on his and Dr. Houghtalen's evaluation, Plaintiff was disabled, precluded from

continuing her academic work, and needed to withdraw from her classes. T.219.

On October 29 and November 19, 2010, see, T.282-86; T.220-22, psychologist John Amos, Ph.D. administered the WAIS-III IQ test to Plaintiff, who scored a Verbal IQ of 89, a Performance IQ of 63, with a resultant Full Scale IQ of 69; this placed her in the borderline range of intellectual abilities. T.221. Plaintiff reported that she had been delivered with forceps which did "some significant damage" in the area of her right frontal lobe, requiring maxillofacial surgery at age 22. T.220. Plaintiff stated that after she was born, her father (a physician) abandoned her and her mother when he learned she might have cognitive disabilities from the forceps delivery. Dr. Amos noted that Plaintiff's psychiatric history was "lengthy," and she reported having seen "too many psychologist and psychiatrists to name individually." T.221. Plaintiff had a history of petit mal seizures, which lasted until she was 17. T.283. Most recently she had been followed at St. Joseph's by psychiatrist Dr. Tullio R. Ortega for 2 years. She currently was on Strattera, Prozac, and Depakote. Dr. Amos diagnosed Plaintiff with ADD and major depressive disorder, with a "rule out" diagnosis of autism pending further evaluation.

On May 5, 2011, State agency consultative psychologist Kavitha Finnity, Ph.D. evaluated Plaintiff at the Commissioner's request. T.223-26. Plaintiff reported living with her mother. She had been working part-time as a cashier at Tops supermarket, which ended in

February 2011, as a result of her depression and anxiety symptoms. She had been receiving outpatient psychiatric treatment for the past 13 years. On examination, her affect was depressed and her mood was dysthymic. T.224. Her attention and concentration were "mildly impaired," and she had difficulty with serial 3s. T.224. Also, her recent and remote memory skills were "mildly impaired"; she was able to recall only 1 out of 3 objects after 5 minutes and was unable to recall any digits backward. T.224. Noting that the "results of the evaluation appear to be consistent with allegations," T.224, Dr. Finnity diagnosed bipolar disorder, not otherwise specified ("NOS"); panic disorder without agoraphobia; and ADD, by history, T.255. For her medical source statement, Dr. Finnity opined that Plaintiff "can follow and understand simple directions and perform simple tasks" but "has difficulty with attention and concentration." T.225. Plaintiff "can maintain a regular schedule"; "can learn new tasks and perform complex tasks with supervision"; and "can make appropriate decisions." Id. However, she "has difficulty [in being able] to relate with others and deal with stress[,]" and will need assistance in managing her funds. Id.

On May 16, 2011, Plaintiff's treating therapist, Michael Boucher, LCSW-R ("Mr. Boucher") of St. Joseph's, completed a questionnaire at the Commissioner's request. See T.228-37. Mr. Boucher had treated Plaintiff about 2 to 3 times per month since 2000. As diagnoses, Mr. Boucher indicated major depressive

disorder, attention deficit/hyperactivity disorder ("ADHD"), panic attacks, and possible autism spectrum disorder. T.228. Current symptoms were as follows: consistent up/down moods, difficulty concentrating, anxiety regarding life situations, and social isolation. T.228. Mr. Boucher observed that while Plaintiff "has had periods of greater and lesser relief from symptoms since 2000[,]" "[m]uch of symptomatology remains the same[.]" T.229. Plaintiff's fatigue was related to her major depressive disorder and affected her desire to engage socially with others and perform tasks. T.230. Mr. Boucher noted that Plaintiff was "never able to work full time" and that she reported difficulties in functioning at both her part-time job and at school. The mental status examination was notable for Plaintiff appearing childlike at times, being emotionally labile, and having a blunted or inappropriate affect at times, some distortions in speech, and limited eye contact. T.231, 232. Plaintiff did not drive because she could not pass the test and got confused about right and left. Mr. Boucher noted that Plaintiff had struggled with anger outbursts, which led to her being fired from her part-time job as a cashier. T.232. She had "limited" attention, "limited" ability to perform calculations, serial 7s, and similar tasks, and "limited" insight and judgment "at times." T.233.

Mr. Boucher noted that Plaintiff had "limits on cognitive/emotional abilities," "does not respond well to pressure," and has "difficulties reading social cues (at times)."

T.233. Her understanding and, in particular, short-term memory were "limited" and she "needs to focus to recall details." T.235. Mr. Boucher stated that Plaintiff's social interaction skills were "limited"; she could "accept simple instructions and supervisory instructions." T.235. Mr. Boucher opined that she could "work independently but [she is] not always aware of limits" and "reacts to emotional content." T.236.

On June 29, 2011, treating psychiatrist Dr. Ortega completed a questionnaire at the Commissioner's request. See T.264-70. He noted he had treated Plaintiff since March 31, 2008, for ADHD, severe dyslexia, depression; he indicated a "rule out" diagnosis of social anxiety. Plaintiff's symptoms were "depression, [illegible], [illegible], [illegible], temper problem, [illegible], avoidant [sic]." T.264. Dr. Ortega reported that Plaintiff's prescriptions were Depakote, fluoxetine, and Strattera, to which she had "fair response, but still [was] very limited." T.265. Dr. Ortega's description of Plaintiff's clinical course is illegible, apart from the notation, "fair to medication, but very limited social skills." T.266. On examination, Plaintiff's speech, thought, and perception were "limited" and her mood/affect were "dysphoric/anxious." T.267. Her attitude, appearance and behavior were "anxious/[illegible]/concrete and simple." T.267. Her attention and concentration were "short"; her orientation, "good"; her memory, "fair"; her information, "poor"; her ability to perform calculations and serial 7s, "poor"; and her insight and judgment,

"poor/very limited." T.267. Dr. Ortega's description of Plaintiff's activities of daily living is illegible, apart from the notation "limited" and "fired from part-time job." T.268. According to Dr. Ortega, Plaintiff's ability to function in a work setting was "<u>poor</u>, even in supportive setting." T.268 (emphasis in original). Dr. Ortega opined that her understanding and memory; sustained concentration and persistence; social interaction; and adaption were "limited." T.269. When asked to give examples on the questionnaire, Dr. Ortega stated, "see records," T.269; see T.271-81 (records).[2] Dr. Ortega opined that Plaintiff had a "poor prognosis" and that her mental condition was expected to last for her lifetime. T.265.

On May 10, 2012, Dr. Ortega completed a "Mental Impairment Questionnaire (RFC & Listings)" at the Commissioner's request. See T.413-18. Dr. Ortega noted that he saw Plaintiff every 12 weeks for 15-to-30-minute appointments. T.413. Her Axis I diagnoses were ADHD and bipolar disorder; her Axis II diagnosis was dyslexia. T.269.[3] Dr. Ortega's assessment of Plaintiff's limitations in his previous questionnaire was again quite restrictive.

---

[2] As discussed further below, the bulk of Dr. Ortega's handwritten treatment notes are illegible.

[3] Axis I is the "top-level of the [Diagnostic and Statistical Manual of Mental Disorders] multiaxial system of diagnosis" and "represents acute symptoms that need treatment . . . ." http://www.psyweb.com/DSM_IV/jsp/Axis_I.jsp (last accessed Sept. 8, 2015). "Axis II is for assessing personality disorders and intellectual disabilities." http://www.psyweb.com/DSM_IV/jsp/Axis_II.jsp (last accessed Sept. 8, 2015).

On June 2, 2012, Dr. Ortega completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). See T.423, 425-26. Dr. Ortega checked boxes indicating that Plaintiff's abilities in all areas were "marked." T.423, 425. His notes regarding other abilities affected by the impairment are illegible, apart from "easily angered." T.425. Dr. Ortega left blank the area under the request to identify the factors supporting his assessment.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."

Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**IV. Discussion**

   **A. Failure to Properly Weigh the Opinion Evidence**

Plaintiff argues that the ALJ misapplied the treating physician rule and erroneously discounted the three questionnaires completed by her treating psychiatrist, Tullio R. Ortega, M.D. See T.264-70 (June 29, 2011 questionnaire); T.413-18 (May 10, 2012 "Mental Impairment Questionnaire (RFC & Listings)"; T.423, 425-26 (June 2, 2012 "Medical Source Statement of Ability to Do Work-Related Activities (Mental)").

The Second Circuit has explained that "[a]lthough the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record. . . ." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal and other citations omitted). When an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion

with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2)).

A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Commissioner of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Commissioner of Social Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

Here, the regulatory factors regarding the length of the treatment relationship and the nature of Dr. Ortega's practice support a finding that he is a treating source: Dr. Ortega is a specialist in the field of psychiatry, and he treated Plaintiff on a consistent basis (approximately every 12 weeks for 15-to-30 minute appointments) beginning in 2008 to at least 2012. Indeed, the Commissioner does not dispute that Dr. Ortega qualifies as a treating source.

However, the ALJ assigned Dr. Ortega's opinions "little weight" despite his treating relationship with Plaintiff, T.25, finding that his "opinions of multiple marked impairments are not supported by objective medical evidence" and "are inconsistent with his own mental status exams provided in his contemporaneous treatment notes." T.25. The Court has reviewed the administrative transcript and attempted to decipher Dr. Ortega's questionnaires, reports, and notes, all of which are handwritten. However, the Court is forced to conclude that significant portions of the reports and questionnaires, as well as virtually all of his treatment notes, are illegible, as evidenced by numerous instances in the parties' submissions where Dr. Ortega's notes and comments are not transcribed. The Court therefore is unable to determine whether the ALJ's main reason for discounting his opinions—that they are "inconsistent with his own mental status exams provided in his contemporaneous treatment notes," T.25—is supported by substantial evidence. Accordingly, the Court finds that remand for

transcription of Dr. Ortega's notes, questionnaires, and reports is required. See Connor v. Barnhart, No. 02 Civ. 2156(DC), 2003 WL 21976404, at *8 (S.D.N.Y. Aug. 18, 2003) ("[C]ourts have held that illegibility of important medical records is a factor warranting a remand for clarification and supplementation.") (quoting Vaughn v. Apfel, No. 98 Civ. 0025(HB), 1998 WL 856106, at *6 (S.D.N.Y. Dec. 10, 1998)). The Court is unclear how the ALJ could find that the Dr. Ortega's opinions are inconsistent with his own treatment notes when the notes (and portions of the opinions) are illegible.

In addition, as Plaintiff points out, the remainder of the ALJ's analysis of Dr. Ortega's opinion is marred by legal error and unsupported by substantial evidence.[4] First, the ALJ found Dr. Ortega's opinion was "inconsistent with other substantial evidence of record—the medical examinations of [consultative psychologist] Dr. [Kavitha] Finnity and the assessment of the claimant's treating counselor [Michael Boucher, LCSW-R]." T.25. "It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at

---

[4] As Plaintiff argues, it is improper for the ALJ to discount a treating physician opinion *solely* based on a comparison of it to the physician's treatment notes. Pl's Br. at 32 (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). In Balsamo, the Second Circuit held that the ALJ erred in rejecting the opinions of the claimant's treating physicians "solely on the basis that the opinions allegedly conflicted with these physicians' own clinical findings" because under regulations, "the medical conclusion of a 'treating' physician is 'controlling' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Balsamo, 142 F.3d at 80 (quoting 20 C.F.R. § 404.1527(d)(2)).

*7 (W.D.N.Y. Oct. 22, 2009) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (other citation omitted)). Here, the ALJ relied upon parsed, selected portions of Dr. Finnity's and Mr. Boucher's opinions that provided support for the ALJ's RFC assessment. For instance, with regard to Mr. Boucher, the ALJ described his questionnaire as supporting "the ability to maintain a limited schedule, accept simple instructions, and work independently." T.24. However, the ALJ ignored aspects of Mr. Boucher's opinion that qualify these statements, such as Mr. Boucher's notation that Plaintiff has "limits on cognitive/emotional abilities," "does not respond well to pressure," and has "difficulties reading social cues (at times)." T.233. Dr. Finnity found that Plaintiff was unable to complete any of the recent and remote memory tests during her consultative examination, but the ALJ found that Plaintiff could "focus on unskilled work for two-hour periods throughout the day, with brief (up to one minute) moments to stretch and refocus."

The Court notes that there are other opinions in the record by treating sources, namely, Dr. Mirza, Dr. Houghtalen and Dr. Amos, which support Dr. Ortega's opinion. However, the ALJ did not address these sources' evaluations and opinions vis-à-vis Dr. Tullio's opinions. "Regardless of its source," the regulations require that "every medical opinion" in the administrative record be evaluated when determining whether a claimant is disabled under the Act. 20 C.F.R. § 416.927(d). Dr. Mirza, Dr. Houghtalen, and

Dr. Amos would constitute "[a]cceptable medical sources" that can provide evidence to establish an impairment include, <u>inter alia</u>, a claimant's treating physicians, psychiatrists, and psychologists. 20 C.F.R. § 416.913(a). This, again, constitutes an improper selective reading of the record. See <u>Royal v. Astrue</u>, Civil Action No. 5:11–456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) ("In effect, ALJ Armstrong 'cherry picked' the evidence, relying on some statements to support his conclusion, while ignoring other substantive detail to the contrary from the same sources. . . . While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion.") (citing, <u>inter alia</u>, <u>Smith v. Bowen</u>, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing <u>Fiorello v. Heckler</u>, 725 F.2d 174, 17576 (2d Cir. 1983)).

Lastly, the ALJ relied on Dr. Ortega's finding that the Plaintiff "had a GAF [Global Assessment of Functioning] score of 55," T.25, to discount his opinion because, the ALJ noted, "[a] GAF score of 55 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. It does not indicate marked limitations in functioning." T.26. However, Plaintiff's GAF score of 55 is not a "good reason" to discount wholesale all of Dr. Ortega's opinions. See <u>Estela-Rivera v. Colvin</u>, No. 13 CV 5060(PKC), 2015 WL 5008250, at *14 (E.D.N.Y. Aug. 20, 2015) ("[T]he ALJ relied on [treating source] Dr. Breving's assessment of Plaintiff's GAF as a 75 as a basis for giving little weight to the

rest of Dr. Breving's opinion. While the ALJ correctly noted that Plaintiff's GAF score of 75 indicated that her symptoms were 'transient and acceptable reaction to psychosocial stressors, which would cause her no more than slight impairment in social or occupational functions', a claimant's GAF score is insufficient evidence to invalidate a treating physician's other clinical findings.") (internal citations to record omitted; citing <u>Santiago v. Colvin</u>, 12 CV 7052, 2014 WL 718424, at *20 n. 10 (S.D.N.Y. Feb. 25, 2014)). As the district court in <u>Santiago</u> noted, "[t]he Commissioner has made clear that the GAF scale *does not* have a direct correlation to the severity requirements contained in the [regulations] that the ALJ considers [to determine whether the claimant has a <u>per se</u> disability]." <u>Id.</u> (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764-65, 2000 WL 1173632 (Aug. 21, 2000); emphasis supplied).

**VI. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings (Dkt #17) is denied, and Plaintiff's Motion for Judgment on the Pleadings (Dkt #12) is granted to the extent that the matter is remanded for further administrative proceedings consistent with this decision. Specifically, the ALJ is directed to develop the record fully by

having all of Dr. Ortega's treatment notes, reports, and questionnaires transcribed. The ALJ is then directed to evaluate Dr. Ortega's treating source opinions in light of the appropriate regulatory factors and in accordance with the case law discussed above, and re-assess the weight to be given Dr. Ortega's opinions. The ALJ also is directed to consider, as part of the record, the new evidence submitted to the Appeals Council by Plaintiff on appeal.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

              **S/Michael A. Telesca**

              HON. MICHAEL A. TELESCA
              United States District Judge

Dated:  September 10, 2015
      Rochester, New York.